GENE FENNELLY ET AL. *v.* EMMA NORTON
(SC 18338)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

---

Argued October 19, 2009—officially released January 19, 2010

*Jeffrey D. Ginzberg,* for the appellants (plaintiffs).

*Leslie I. Jennings-Lax,* for the appellee (defendant).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether General Statutes § 46b-62[1] authorizes a trial court to order the applicant in a visitation proceeding brought pursuant to General Statutes § 46b-59[2] to pay

---

[1] General Statutes § 46b-62 provides: "In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213v, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the compensation of the attorney shall be established and paid by the Commission on Child Protection."

[2] General Statutes § 46b-59 provides: "The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

the attorney's fees of the responding parent. The plaintiffs, Gene Fennelly and Sharon Fennelly, the paternal grandparents of the two minor children of the defendant, Emma Norton, appeal[3] from the judgment of the trial court granting the defendant's motion for an award of attorney's fees, and also ordering them to pay 90 percent of the fees for Martha Wieler, the court-appointed attorney for the minor children, in connection with the plaintiffs' appeal from the trial court's dismissal of their application for visitation. On appeal, the plaintiffs claim that the trial court improperly: (1) concluded that the provisions of § 46b-62 apply to grandparents and other nonparents, thereby authorizing the court to order them to pay the attorney's fees incurred by the defendant; and (2) appointed Wieler as attorney for the minor children and directed the plaintiffs to pay the majority of her fees. We agree and, accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In August, 2005, the plaintiffs filed an application for visitation with the minor children pursuant to § 46b-59. In November, 2005, the trial court, *Burke, J.*, granted the defendant's motion to dismiss the application, concluding after a hearing "that the plaintiffs [had] failed to prove, by clear and convincing evidence, that they had a relationship with the children similar in nature to a parent-child relationship and that [dismissal] of the visitation [application] would cause real and significant harm to the children." *Fennelly* v. *Norton*, 103 Conn. App. 125, 128, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007). Thereafter, the plaintiffs appealed, and the Appellate Court affirmed the judgment of dismissal on the ground that the trial court lacked subject matter jurisdiction over

[3] The plaintiffs appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the application, which was prepared using only the form provided by the office of the chief court administrator that did not set forth any specific factual allegations, was not supplemented by an amended complaint or affidavits, and did not comply with the heightened pleading standards for petitions for third party visitation against the wishes of a fit parent, as articulated in *Roth* v. *Weston*, 259 Conn. 202, 234–35, 789 A.2d 431 (2002).[4] See *Fennelly* v. *Norton*, supra, 136–42.

While the plaintiffs' appeal was pending before the Appellate Court, the defendant moved in June, 2006, for an award of counsel fees and transcript costs or to be provided with copies of all transcripts, claiming that she lacked "sufficient funds or other liquid assets to pay the attorney's fees and transcript costs necessitated

---

[4] In *Roth* v. *Weston*, supra, 259 Conn. 202, we considered a claim that § 46b-59 was unconstitutional in light of *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and articulated a judicial gloss to render the statute constitutional in light of that decision, namely, that, "[i]mplicit in the statute is . . . a rebuttable presumption that visitation that is opposed by a fit parent is not in a child's best interest. In sum, therefore, we conclude that there are two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition.

"First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition.

"Second, once these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation. These requirements thus serve as the constitutionally mandated safeguards against unwarranted intrusions into a parent's authority." *Roth* v. *Weston*, supra, 259 Conn. 234–35.

by [the] plaintiffs' appeal." In November, 2006, the trial court, *Alvord, J.*, pursuant to General Statutes § 46b-54 (b),[5] sua sponte appointed Wieler, with the support of the defendant, and over the objection of the plaintiffs, as attorney for the minor children to represent their legal interests with respect to the fee issue. The trial court then ordered all parties to submit financial affidavits in advance of a subsequent hearing to determine the allocation of Wieler's fees.[6] In July, 2007, the trial court ordered the plaintiffs to pay, prior to the next hearing, $2880, which represented 90 percent of Wieler's $3200 retainer, noting that, because the plaintiffs had testified that they had paid child support to the defendant on behalf of their incarcerated son, and "voluntarily stepped into the role of parent," they were required to contribute to Wieler's fees under § 46b-62.

Subsequently, in November, 2007, Judge Alvord granted the defendant's motion for attorney's fees pursuant to § 46b-62, concluding that § 46b-62 constitutes a statutory exception to the common-law American rule, under which attorney's fees and the ordinary expenses and costs of litigation are borne by the parties individually. Noting a split of authority among our sister states with respect to whether their statutes and case law authorize an award of attorney's fees against a third party seeking visitation, the trial court emphasized that, after this court's decision in *Roth* v. *Weston*, supra, 259

---

[5] General Statutes § 46b-54 (b) provides: "Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child."

[6] The plaintiffs appealed from this order to the Appellate Court, which subsequently granted the defendant's motion to dismiss the appeal for lack of a final judgment.

Conn. 502, a visitation petition required the plaintiffs to "[try] through numerous judicial means to show that they enjoy a parental type relationship." The trial court then noted that, under the language of § 46b-62, "grand-parents are allowed to intervene but are not subject to the penalties of bringing and pursuing costly litigation . . . ." Noting the body of Connecticut case law "consider[ing] the importance of requiring a financial discrepancy between parties" to warrant an attorney's fee award in the family context, the trial court concluded that "the evidence demonstrates that throughout the period of grandparent litigation, the defendant is and was the sole financial supporter of the children, earning a moderate income of $50,000 per year, and has been raising her children without [the] financial, emotional or physical support of their absent father. Further, the defendant has been brought into court repeatedly at the initiation of the plaintiffs for hearings and to defend appeals. Each time, the plaintiffs' attempts at gaining visitation rights have been unsuccessful. In comparison to the defendant's financial capabilities, the plaintiffs' financial affidavits demonstrate significant capabilities." The trial court concluded, therefore, that given the lack of guidance from the statutory language and the case law, "it is fair and equitable based on the parties' respective financial abilities for this court to award attorney's fees to the defendant."

Accordingly, the court directed the defendant's counsel to submit to plaintiffs' counsel an itemization of the fees incurred in defending the appeal, to be followed by a submission of the plaintiffs' specific objections to the court. After determination and calculation of the proper fee,[7] the trial court directed the plaintiffs to pay 85 percent of the attorney's fees incurred by the

---

[7] The trial court clarified that it had approved all of the defendant's requested attorney's fees in the amount of $20,691.31, except for a $475 reduction.

defendant, to be paid directly to counsel in weekly installments of $200, in addition to the previously paid 90 percent of Wieler's $3200 retainer. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly: (1) ordered them to pay the attorney's fees of the defendant pursuant to § 46b-62; and (2) appointed an attorney for the minor children, and then directed the plaintiffs to pay the majority of the attorney's fee. We address each claim in turn.

I

We begin with the plaintiffs' claim that the trial court improperly disregarded the plain meaning of § 46b-62 in requiring them to pay the attorney's fees incurred by the defendant. They contend specifically that, by its plain language, § 46b-62 applies only to " 'spouse[s]' " or " 'parent[s],' " and that the legislature "did not see fit to expand the list of payors to grandparents and other third parties." The plaintiffs further argue that, even if we find § 46b-62 to be ambiguous, the relevant extratextual sources support their position that the statute is an exception to the American rule under which attorney's fees and costs are not awarded to the successful party in the absence of a contractual or statutory exemption, and that this case does not fit within the rationale for § 46b-62, namely, that "a party should not be deprived of his or her rights because of lack of funds which might be supplied from property or assets in which they have a real interest, but which are within the control of the other spouse."

In response, the defendant contends that § 46b-62 is internally contradictory and ambiguous because it includes within its broad ambit third party visitation proceedings under § 46b-59, despite the "parent or spouse" language relied upon by the plaintiffs. The defendant then claims that, under case law, including

*Moll* v. *Gianetti*, 8 Conn. App. 50, 510 A.2d 1009 (1986),
and *Benson* v. *Benson*, 5 Conn. App. 95, 497 A.2d 64
(1985), we should construe "parent" or "spouse" to
include all third party visitation applicants, and notes
also that, unlike in some of our sister states, § 46b-62
rendered it unnecessary for our legislature to include
within § 46b-59, the third party visitation statute, a sepa-
rate provision for attorney's fees. Finally, the defendant
contends that a construction of § 46b-62 not authorizing
an award of attorney's fees in third party visitation
proceedings will interfere with her constitutional right
as a fit parent to choose with whom her children will
associate; see *Roth* v. *Weston*, supra, 259 Conn. 216–17;
by precluding her from defending that right in proceed-
ings brought by plaintiffs with greater financial
resources. We agree with the plaintiffs and conclude
that § 46b-62 does not authorize an award of attorney's
fees against grandparents or other third parties petition-
ing for visitation under § 46b-59.[8]

Whether § 46b-62 authorizes an award of attorney's
fees against grandparents or other third parties petition-
ing for visitation under § 46b-59 "raises a question of
statutory construction, which is a [question] of law, over
which we exercise plenary review. . . . The process of
statutory interpretation involves the determination of
the meaning of the statutory language as applied to the
facts of the case, including the question of whether the
language does so apply. . . .

"When construing a statute, [o]ur fundamental objec-
tive is to ascertain and give effect to the apparent intent
of the legislature. . . . In other words, we seek to

---

[8] As the parties point out, our trial courts are split on this issue. Compare
*Denardo* v. *Bergamo*, Superior Court, judicial district of Waterbury, Docket
No. FA-98-0148318-S (April 8, 2004) (concluding that § 46b-62 does not autho-
rize attorney's fee award against grandparent), with *Weber* v. *Weber*, Superior
Court, judicial district of Litchfield, Docket No. FA-90-0054535-S (February
18, 1994) (awarding such fees).

determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 8–9, 976 A.2d 668 (2009).

Accordingly, we begin with the language of § 46b-62, which provides in relevant part: "*In any proceeding seeking relief under the provisions of this chapter* . . . the court may order *either spouse* or, if such proceeding concerns the custody, care, education, *visitation* or support of a minor child, *either parent* to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the *father, mother or an intervening party,* individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. . . ." (Emphasis added.) In our view, the statutory language is ambiguous, because the language providing that the statute applies in proceedings under § 46b-59; see footnote 2 of this opinion; which are proceedings under the relevant chapter that are not necessarily litigated by one "parent" against the other, potentially

conflicts with the language limiting the payors of attorney's fees to "either parent . . . ." Accordingly, the statute is ambiguous, and we may consider extratextual sources in our construction of § 46b-62.

This ambiguity aside, however, the language and structure of § 46b-62, especially when viewed in the context of the other provisions of chapter 815j of the General Statutes, indicate strongly that the statute does not authorize trial courts to order grandparents or other third parties petitioning for visitation to pay the attorney's fees incurred by opposing litigants. By using the words "spouse" and "parent" to limit the field of potential payors of attorney's fees under § 46b-62, the legislature circumscribed the application of the statute, especially when it is viewed in context with the broader language of the second clause of that same statute, which authorizes the court to "order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees" of a court-appointed attorney for the minor child.[9] General Statutes § 46b-62.

---

[9] In support of her argument that the first clause of § 46b-62, providing for the statute's broad applicability, means that the statute must apply in this grandparent visitation proceeding, despite the "parent" or "spouse" language, the defendant relies heavily upon *Dobozy* v. *Dobozy*, 241 Conn. 490, 697 A.2d 1117 (1997), and *Benson* v. *Benson*, supra, 5 Conn. App. 95. We disagree with her reliance on these cases. First, in *Dobozy* v. *Dobozy*, supra, 495, we concluded that § 46b-62 was applicable in a proceeding to decide a motion for contempt alleging noncompliance with child support orders, even when the defendant had averted a finding of contempt by subsequently paying the relevant arrearage. On the basis of the nature of the proceeding, we concluded that § 46b-62 is coextensive with General Statutes § 46b-87, which permits trial courts to award attorney's fees following a finding of contempt. Id., 498–99. We relied on the policy behind § 46b-62 to conclude that the trial court's authority to award fees was not contingent upon a finding that the "respondent is in contempt," noting that "to infer such a limitation would preclude a financially disadvantaged parent from recovering attorney's fees from a recurrently recalcitrant former spouse so long as the spouse complies with family support orders at, or immediately prior to, the time of the contempt proceeding and persuades the trial court that his compliance, although belated, militates against a finding of contempt." Id., 497–98. We emphasized the distinction between the two statutes, noting that § 46b-87 authorizes an attorney's fee award as a sanction, and

The legislature's use of the different term "intervening party" in the context of the fees of the attorney for the minor child indicates a conscious choice not to do so in the context of fee awards between litigants. See, e.g., *Saunders* v. *Firtel*, 293 Conn. 515, 527, 978 A.2d 487 (2009) ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]); *State* v. *Orr*, 291 Conn. 642, 656, 969 A.2d 750 (2009) ("[t]he marked difference in the text of the statutory exceptions, together with the specific language and syntax used by the legislature, as well as the statute's direction to read the exceptions 'as specifically limited,' lead us to conclude that this exception was *not* intended to permit in-court testimony" [emphasis in original]); *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988) ("[t]he use of different words [or the absence

unlike § 46b-62, does not require consideration of the parties' abilities to pay. Id., 499. In our view, *Dobozy* is inapposite because it involved the relationship of § 46b-62 with a coextensive statute and, unlike the present case, did not depend on whether the father was a payor under the terms of the statute.

We also disagree with the defendant's reliance on *Benson* v. *Benson*, supra, 5 Conn. App. 95, which predated the amendment of § 46b-62 to include "parents." See footnotes 10 through 13 of this opinion and the accompanying text. In *Benson*, the Appellate Court upheld an award of attorney's fees to a mother in a modification proceeding brought pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), and rejected the father's argument that "the use of the word 'spouse,' rather than 'party,' in . . . § 46b-62, limits the award of counsel fees to a current spouse. . . . Section 46b-62 is expressly applicable to any proceeding seeking relief under the provisions of chapter 815j of the General Statutes concerning dissolution of marriage, legal separation and annulment [fees]." *Benson* v. *Benson*, supra, 99. We disagree with the defendant's argument that the Appellate Court's analysis in *Benson* was founded solely on the applicability of § 46b-62 to proceedings under the UCCJA, which is codified in chapter 815o of the General Statutes. Id., 99 n.3. Rather, the Appellate Court's decision refers specifically to the reference in § 46b-62 to dissolution proceedings under chapter 815j, to conclude that the payor "spouse" logically must include former, as well as current spouses. Id., 99.

of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention" [internal quotation marks omitted]).

The legislative genealogy and history of § 46b-62 also support the plaintiffs' construction of § 46b-62. It is well settled that "[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996). Thus, it is significant that § 46b-59 existed in its present form, authorizing an award of visitation rights to "any person,"[10] when the legislature enacted Public Acts 1988, No. 88-41, to amend § 46b-62 in response to the Appellate Court's decision in *Moll* v. *Gianetti*, supra, 8 Conn. App. 52–53, which had concluded that the previous version of the statute was, without a judicial gloss, unconstitutional because it discriminated on the basis of illegitimacy.[11] Specifically,

[10] We note that § 46b-59 previously had been limited only to grandparents, but the legislature enacted Public Acts 1983, No. 83-95, to create a visitation petition action separate from a dissolution proceeding that "would allow the court to grant rights to any person in such a proceeding," and "do away with costly and long involved [habeas] and other types of suits that would grant this right." 26 H.R. Proc., Pt. 6, 1983 Sess., p. 2222, remarks of Representative Lawrence Riefberg.

[11] In *Moll* v. *Gianetti*, supra, 8 Conn. App. 52–53, the Appellate Court concluded that language in § 46b-62 restricting its application to "spouses," thereby precluding a custodial parent of a child born out of wedlock from recovering attorney's fees in a support proceeding against the noncustodial parent, violated the equal protection clause of the fourteenth amendment to the United States constitution by discriminating on the basis of illegitimacy. The court emphasized that, "[t]o construe § 46b-62 so as to deny a custodial parent the right to collect, from the noncustodial parent, counsel fees incurred in an action under [General Statutes] § 46b-61 for support of an illegitimate child would effectively preclude the pursuit of support from noncustodial parents on behalf of the class of illegitimate children in need of maintenance by custodial parents without funds to prosecute such suits. Indeed, such a financial restriction would be in direct conflict with the policy expressed by the legislature in the 1974 extension of § 46b-61 to illegitimate children and the parallel provisions of surrounding statutes for payment of reasonable fees of counsel for all minor children regardless of

Public Act 88-41 added the "either parent" language with respect to custody and visitation proceedings, as well as the section authorizing the court to order the fees of the attorney for the minor child to be paid by the "father, mother or an intervening party . . . ."[12] Public Act 88-41. That the legislature did not amend § 46b-62 to authorize the trial court to order a nonparent to pay attorney's fees—despite the existence of § 46b-59 at the time that it amended § 46b-62 to include other language authorizing the court to order an intervening party to pay the fees of an attorney for the minor child—is convincing evidence that the legislature did not intend to authorize trial courts to order third parties seeking visitation to pay the attorney's fees of the respondent parent. Put differently, had the legislature intended to draft statutory language authorizing the trial court to order such fees against payors other than parents or

---

social or familial characterization. It would be a legislative hoax to permit an action for support of illegitimate children under § 46b-61 and at the same time to bar effectively such actions for their support in cases of greatest need exhibited by custodial parents who, because of indigency, cannot even enter the courtroom for want of counsel fees." Id., 53–54.

[12] "[I]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, supra, 293 Conn. 11–12. David Hemond, a staff attorney for the Connecticut law revision commission (commission), testified before the judiciary committee that the statutory amendment to § 46b-62 was "necessary to address a constitutional defect in a statute which allocates [attorney's] fees in family cases and it deals with the fact that under the current statute there is no way to get [attorney's] fees allocated on behalf . . . of illegitimate children.

"The current statute is drafted using the [word] spouses and therefore would not apply to a parent of an illegitimate child.

"The [b]ill is necessary to address that defect. The [b]ill also allows [attorney's] fees to be allocated where a child has an attorney appointed on its behalf currently the [attorney's] fees can be allocated between both parents. In some cases, there is a grandfather or [someone] of that nature, a foster parent, who is intervening. This [b]ill would allow you to equitably and fairly allocate the [attorney's] fees among all parties in the action." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., p. 69; see also id., p. 165 (written summary of commission's recommendations).

spouses, it easily could have done so.[13] See, e.g., *State*

[13] Thus, we disagree with the defendant's contention that, "[b]ecause the intent of the legislature in amending § 46b-62 to include parents was in direct response to [the Appellate Court's] decision in *Moll* v. *Gianetti*, [supra, 8 Conn. App. 50] it would be unreasonable to assume that the list of groups against whom an award of attorney's fees can be made is exhaustive . . . [rather] it is much more logical to conclude that the legislature intended for attorney's fees to be recoverable for any proceedings commenced under any provision of chapter 815j, including § 46b-59." Had the legislature desired the list of potential payors to be illustrative, rather than exhaustive, it could have used language to that effect, namely, terms like "including" and "such as." See, e.g., *Pedro* v. *Miller*, 281 Conn. 112, 120, 914 A.2d 524 (2007) ("[t]he word 'including' indicates that the enumerated reasons do not comprise an exhaustive list, but rather that they are merely examples").

We also disagree with the defendant's reliance on the statutes of certain of our sister states in support of the proposition that, "[i]t is logical to assume that our legislature found such an inclusion unnecessary because § 46b-62 already permits an award of attorney's fees for any proceeding commenced under any provision of chapter 815j, including visitation actions commenced pursuant to § 46b-59." Having reviewed the applicable statutes from our sister states, both those cited by the defendant and those revealed by our independent research, we note that they support the proposition that the legislative authorities are well aware of how to provide for attorney's fee awards in this context.

For example, some state legislatures have seen fit to provide expressly for an award of attorney's fees in their grandparent visitation statutes. Some of these statutes authorize an award of fees and costs bilaterally or to the prevailing party. See Colo. Rev. Stat. Ann. § 19-1-117 (3) (2009) (authorizing award of "reasonable attorney fees to the prevailing party"); Iowa Code § 600C.1 (9) (2001) (same); Mo. Rev. Stat. § 452.402 (7) (2000) ("[t]he court may award reasonable [attorney's] fees and expenses to the prevailing party"); Okla. Stat. Ann. tit. 10, § 5 (H) (West 2007) ("[i]n any action for grandparental visitation pursuant to this section, the court may award attorney fees and costs, as the court deems equitable"); Or. Rev. Stat. § 109.119 (7) (b) (2007) (authorizing court to "[a]ssess against a party reasonable attorney fees and costs for the benefit of another party"); Wash. Rev. Code Ann. § 26.10.080 (West 2005) ("[t]he court from time to time, after considering the financial resources of all parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment"); W. Va. Code Ann. § 48-10-1101 (LexisNexis 2004) ("[i]n an action brought under the provisions of this article, a circuit court may order payment of reasonable attorney's fees and costs based upon the equities of the positions asserted

v. *Orr*, supra, 291 Conn. 656 ("[i]f the legislature wanted

by the parties to pay such fees and costs"); cf. Vt. Stat. Ann. tit. 15, § 1014 (2002) ("[a] court may modify or terminate any order granted under this section, issue any orders necessary to the enforcement of rights or the protection of parties under this section, and award costs for defending or prosecuting actions under this section").

Other states have statutes authorizing the court to direct the petitioner or grandparent to pay the attorney's fees of the respondent parent, regardless of outcome. See Kan. Stat. Ann. § 38-131 (2000) ("[c]osts and reasonable attorney fees shall be awarded to the respondent in an action filed pursuant to [grandparent visitation statutes] unless the court determines that justice and equity otherwise require"); Miss. Code Ann. § 93-16-3 (4) (2004) ("The court shall on motion of the parent or parents direct the grandparents to pay reasonable attorney's fees to the parent or parents in advance and prior to any hearing, except in cases in which the court finds that no financial hardship will be imposed upon the parents. The court may also direct the grandparents to pay reasonable attorney's fees to the parent or parents of the child and court costs regardless of the outcome of the petition."); cf. Ga. Code Ann. § 19-7-3 (d) (2004) ("[i]f the court finds that the grandparent or grandparents can bear the cost without unreasonable financial hardship, the court, at the sole expense of the petitioning grandparent or grandparents, may . . . [1] [a]ppoint a guardian ad litem for the minor child"). We note also that the Maine legislature has repealed the attorney's fee provision of its grandparent visitation statute. See 2005 Me. Laws, c. 323, § 13, repealing Me. Rev. Stat. Ann. tit. 19, § 1803 (6).

In contrast to these more specific statutes, our research also has revealed statutes providing for attorney's fee awards in family matters cases that conceivably could apply to grandparent or third party visitation actions on the basis of the use of the broader term "party," rather than "parent" or "spouse," in reference to potential payors. See, e.g., Alaska Stat. § 25.20.115 (2008) ("[i]n an action to modify, vacate, or enforce that part of an order providing for custody of a child or visitation with a child, the court may, upon request of a party, award attorney fees and costs of the action"); Ariz. Rev. Stat. Ann. § 25-324 (2007) ("after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, [the court] may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding," including attorney's fees, under dissolution or child custody and visitation statutes); S.C. Code Ann. § 63-3-530 (A) (38) (2009) ("[s]uit money, including attorney's fees, may be assessed for or against a party to an action brought in or subject to the jurisdiction of the family court," which include grandparent visitation petitions pursuant to § 63-3-530 [A] [33]); Wis. Stat. Ann. § 767.241 (1) (West 2009) ("[t]he court, after considering the financial resources of both parties, may . . . [a] [o]rder either party to pay a reasonable amount for the cost to the other party of maintaining or responding to an action affecting the family and for attorney fees to either party").

to make specific allowances for the disclosure of otherwise confidential communications between social workers and their clients in court proceedings, it could have done so").

Indeed, we find instructive the New York courts' treatment of that state's attorney's fee statute; N.Y. Dom. Rel. Law § 237 (b) (McKinney 1999);[14] which, like § 46b-62, describes the potential payors as either "parent" or "spouse." Although the New York Court of Appeals has yet to consider this question, all four departments of the Appellate Division have concluded that, under that statute, "[a]n award of an attorney's fee is not authorized in a proceeding for grandparent visitation."[15] *Gold* v. *Gold*, 53 App. Div. 3d 485, 488, 861

---

[14] New York Domestic Relations Law § 237 (b) (McKinney 1999) provides in relevant part: "Upon any application to annul or modify an order or judgment for alimony or for custody, visitation, or maintenance of a child . . . or *upon any application by writ of habeas corpus or by petition and order to show cause concerning custody, visitation or maintenance of a child*, the court may direct a *spouse or parent* to pay such sum or sums of money for the prosecution or the defense of the application or proceeding by the *other spouse or parent* as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. . . ." (Emphasis added.)

[15] We find misplaced the defendant's reliance on *C.F.B.* v. *T.B.*, 9 Misc. 3d 1105A, 806 N.Y.S.2d 443 (2005), wherein the trial court had granted the grandparents' petition for sole custody of their daughter's child, with visitation available for the mother. In that case, the mother's attorney and the law guardian sought an order directing the grandparents to pay their fees. The court directed the grandparents to pay those attorney's fees, noting that the Appellate Division cases were limited to grandparent visitation, rather than a custody dispute, and also that the grandparents had assumed a "parental" role by seeking custody. We disagree with the defendant's reliance on *C.F.B.* because, even if that decision is consistent with the Appellate Divisions' analysis of the language of New York Domestic Relations Law § 237 (b), which does not include grandparents or third parties, it is a custody case in which the grandparents sought, in essence, parental status with respect to their grandchild. In the present case, their alleged "parent-like" status aside, the plaintiffs sought only visitation.

We also disagree with the defendant's reliance on *Holm* v. *Holm*, 323 Or. 581, 919 P.2d 1164 (1996), wherein the Oregon Supreme Court concluded that a trial court properly could order a grandfather, who had intervened in a dissolution proceeding for purposes of receiving grandparent visitation,

N.Y.S.2d 748 (2008); see also *Follum* v. *Follum*, 302 App. Div. 2d 861, 862, 755 N.Y.S.2d 145 (2003); *Coulter* v. *Barber*, 214 App. Div. 2d 195, 196, 632 N.Y.S.2d 270 (1995); *Lewin* v. *Caplan*, 159 App. Div. 2d 369, 553 N.Y.S.2d 3 (1990). In so concluding, the leading appellate case on this issue, *Lewin* v. *Caplan*, supra, 369, follows a Family Court decision noting that § 237 (b) of the New York Domestic Relations Law "was amended in 1978 and the [l]egislature saw fit not to alter [that] provision despite the fact that existing [§] 72 of the Domestic Relations Law gave a grandparent the right to petition for visitation of a grandchild under certain circumstances." *Koch* v. *Koch*, 99 Misc. 2d 124, 415 N.Y.S.2d 369 (1979).

In the present case, the defendant argues, however, that the plaintiffs "stepped into the shoes of a parent" for purposes of § 46b-62. She contends that it is "illogical" that the plaintiffs' allegations of a "parent-like relationship" with her children are not "enough to bring them under the statute" and that they "cannot claim to have parent status for one purpose, i.e., asserting visitation rights, but not for another purpose, i.e., being subject to an award of attorney's fees." The defendant's status oriented arguments are, however, inconsistent with our construction of the term "parent" in chapter 815j of the General Statutes, under which "the marital relations statutes consistently draw a linguistic distinction between a 'parent' of a child and an interested

to pay the attorney's fees of the mother. The Oregon court reasoned that, by intervening in the proceeding, the grandfather became a "party" to that proceeding and therefore, became subject to the state's family matters attorney's fee statute; Or. Rev. Stat. § 107.105 (5); which permits an award of fees against one " 'party' " in favor of " 'the other party.' " *Holm* v. *Holm*, supra, 585–87. In our view, *Holm* is distinguishable because the applicable Oregon statute uses the broader term "party" to describe a potential payor, rather than the more specific "parent" or "spouse" language of § 46b-62. See also Or. Rev. Stat. § 109.119 (7) (b) (2007) (current statute governing award of attorney's fees in visitation petitions).

'third party' with respect to custody of the child." *Doe* v. *Doe*, 244 Conn. 403, 429, 710 A.2d 1297 (1998); id., 430 (discussing, inter alia, § 46b-59, providing that "grant of visitation rights with minor child under section 'shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted' "); see also *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 422, 426 A.2d 1324 (1980) ("statutory provisions relating to the same subject matter may be looked to for guidance"). Indeed, in *Doe* v. *Doe*, supra, 435, we determined that the "child of the marriage" concept with respect to the courts' subject matter jurisdiction over custody determinations in dissolution cases remained viable despite alterations to General Statutes § 46b-56, and stated that the term is "limited to a child conceived by both parties, a child adopted by both parties, a child born to the wife and adopted by the husband, a child conceived by the husband and adopted by the wife, and a child born to the wife and conceived through artificial insemination by a donor pursuant to [General Statutes] §§ 45a-771 through 45a-779."[16] See also id., 439 ("[t]he child of the marriage and the parent of the child are two sides of the same coin"); *Weidenbacher* v. *Duclos*, 234 Conn. 51, 62–63, 661 A.2d 988 (1995) (emphasizing that person must be "biological or adoptive [parent]" or " 'legal guardian' " to have standing to pursue habeas corpus proceeding for child custody). Thus, had the legislature intended to make attorney's fee orders available against grandparents or other third parties under § 46b-62, it would have had to amend § 46b-62 to do so, in the face of our construction of the term "parent." See *State* v. *Orr*, supra, 291 Conn. 657 ("[w]e presume that the legislature is aware of the judicial construction placed

---

[16] We note that this definition is consistent with the common meaning of the term parent, defined in relevant part as a noun, namely, "one who begets, gives birth to, or nurtures and raises a child; a father or mother." American Heritage College Dictionary (4th Ed. 2002).

upon its enactments" [internal quotation marks omitted]).

We also disagree with the defendant's argument that our interpretation of § 46b-62 is "constitutionally suspect," because, as the defendant argues, "it would be a hoax to recognize that a parent, inherent in his or her right to parent, has the right to choose with whom his or her children visit and then effectively to bar that parent from raising a defense when such visitation is sought through the judicial system because that parent cannot even enter the courtroom for want of counsel fees. If the defendant, because of her financial circumstances, is unable to enter that courtroom for want of counsel and therefore is unable to defend against the plaintiffs' appeal, the machinations in which [this court] engaged to protect the rights of fit parents to rear their children as they see fit will be for naught." (Internal quotation marks omitted.) First, we fail to see how our interpretation of § 46b-62 with regard to attorney's fees can be "constitutionally suspect" in light of the Appellate Court's observation in *Foster* v. *Foster*, 84 Conn. App. 311, 320, 853 A.2d 588 (2004), that there is "no constitutionally protected right to counsel in a custody or visitation proceeding . . . ." Given the legislature's failure to amend § 46b-62 to provide for the appointment of counsel after our constitutional gloss on § 46b-59 articulated in *Roth* v. *Weston*, supra, 259 Conn. 234–35, as well as the fact that the *Roth* gloss already has reduced the potential burden on parents by imposing heightened pleading and proof standards in third party visitation proceedings; see footnote 4 of this opinion; we conclude that expansion of § 46b-62 to potential payors other than parents or spouses must be accomplished legislatively, rather than judicially.[17]

---

[17] As the defendant points out correctly, we have attempted to guard constitutionally protected "parental prerogative" through the implementation of heightened pleading standards and the clear and convincing standard of proof in third party visitation proceedings. See *Roth* v. *Weston*, supra, 259 Conn. 232 ("[t]he prospect of competent parents potentially getting

Finally, our construction of § 46b-62 is consistent with the fact that its enactment in 1973 represented a departure from the common-law American rule followed in Connecticut, including in family matters cases, under which "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 148, 943 A.2d 406 (2008); see also *Murphy* v. *Murphy*, 180 Conn. 376, 380, 429 A.2d 897 (1980). Thus, "we are mindful of other rules of statutory construction applicable when determining whether a statute has abrogated the common law. [W]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought

caught up in the crossfire of lawsuits by relatives and other interested parties demanding visitation is too real a threat to be tolerated in the absence of protection afforded through a stricter burden of proof"). Thus, it may well be good public policy for an attorney's fee order to be available in a visitation proceeding brought under § 46b-59. See S. Newman, "Grandparent Visitation Claims: Assessing the Multiple Harms of Litigation to Families and Children," 13 B.U. Pub. Int. L.J. 21, 34 (2003) ("[t]he realities of litigation costs can work against the best interests of the child"); L. Nolan, "Beyond *Troxel*: The Pragmatic Challenges of Grandparent Visitation Continue," 50 Drake L. Rev. 267, 287–88 (2002) (noting that "[s]ingle parents are especially vulnerable to settling because of financial constraints" and "the pragmatic challenge of economics is disruptive to the parent-child relationship"). Indeed, such an order also conceivably could be made against a parent of means who improperly withholds visitation from a third party able to satisfy the standards set forth in *Roth* v. *Weston*, supra, 234–35. In the absence, however, of a claimed constitutional right to counsel in *all* visitation proceedings, the strict construction applied to attorney's fee statutes in derogation of the common-law American rule; see, e.g., *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 724, 949 A.2d 1189 (2008); requires us to defer to the legislature's policy making authority on this matter.

within its scope." (Internal quotation marks omitted.) *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 724, 949 A.2d 1189 (2008); cf. *Levesque* v. *Bristol Hospital, Inc.*, 286 Conn. 234, 262, 943 A.2d 430 (2008) ("costs are a creature of statute, and, therefore, a court may not tax a cost unless it is clearly empowered to do so . . . because statutes in derogation of the common law are to be strictly construed" [citation omitted]). Accordingly, we conclude that § 46b-62 does not authorize trial courts to order grandparents or other third parties to pay attorney's fees in visitation petitions filed pursuant to § 46b-59.

## II

We next consider the plaintiffs' claim that the trial court improperly, sua sponte, appointed an attorney for the minor children pursuant to § 46b-54,[18] and also improperly ordered them to pay her fees. Specifically, the plaintiffs contend, inter alia, that the trial court: (1) did not have the authority or jurisdiction to appoint the attorney since the visitation proceeding already had been dismissed; and (2) improperly appointed the attor-

[18] General Statutes § 46b-54 provides: "(a) The court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian of any child or at the request of any child who is of sufficient age and capable of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child."

ney for the minor children for the purpose of opining on the ultimate issue in controversy, namely, whether to require the plaintiffs to pay the attorney's fees incurred by the defendant. We address each claim in turn.

## A

We begin with the plaintiffs' claim that the trial court did not have jurisdiction to appoint the attorney since their visitation action had been dismissed. In response, the defendant argues that, because of the pending appeal from the judgment dismissing the plaintiffs' petition, the trial court retained jurisdiction to appoint the attorney for the minor children. We agree with the defendant and conclude that the trial court had continuing jurisdiction to appoint an attorney for the minor children because of the pending appeal.

As the defendant points out, the Appellate Court's opinion in *Lindo* v. *Lindo*, 48 Conn. App. 645, 710 A.2d 1387 (1998), is instructive in the present case. In that case, the father of a minor child claimed that the trial court improperly awarded attorney's fees to the child's mother because the court already had dismissed, for lack of subject matter jurisdiction, the father's motion to modify a foreign matrimonial judgment filed pursuant to General Statutes § 46b-70 et seq. Id., 650. The Appellate Court disagreed and stated that, although " 'any further discussion of the merits is pure dicta' "; id., 651; after a trial court determines that it lacks subject matter jurisdiction over the case, an "award of attorney's fees pursuant to § 46b-62, given when the interests of justice so require, is not a ruling on the 'merits' of the underlying action." Id., 652. The Appellate Court then emphasized that "[a] court always has jurisdiction to determine its own jurisdiction. . . . Moreover, [i]t is well established that a trial court maintains jurisdiction over an action subsequent to the filing of an appeal."

(Citations omitted; internal quotation marks omitted.) Id. The Appellate Court concluded, "therefore, that because the trial court (1) maintained continuing jurisdiction during the pendency of the appeal, (2) was statutorily authorized to award attorney's fees, and (3) did not rule on the merits of the case, it did not act improperly in awarding attorney's fees to the [mother]." Id.

Thus, because the attorney's fee award did not relate to the merits of the plaintiffs' visitation petition, and the pending appeal in the Appellate Court continued the trial court's jurisdiction over preliminary jurisdictional matters, we conclude that the trial court retained jurisdiction to appoint an attorney for the minor children pursuant to § 46b-54.[19]

## B

The plaintiffs' final claim is that the trial court improperly appointed Wieler as an attorney for the minor children for the purpose of opining on the ultimate issue in controversy, namely, whether to require the plaintiffs to pay the attorney's fees of the defendant. They argue that "asking [Wieler] to give an opinion on this issue is like asking the grandchildren for an opinion on how their inheritance should be spent." The defendant contends in response that the appointment of Wieler was a proper exercise of the trial court's discretion pursuant to § 46b-54 because Wieler "represent[ed] the children's interests in the financial effects of an award of attorney's fees to their sole guardian and financial provider on an appeal from the dismissal of a visitation action that concerned them." We agree with the plaintiffs and conclude that the trial court abused its discretion by

---

[19] Accordingly, we also disagree with the plaintiffs' argument that, since their petition had been dismissed, no action was then pending during the attorney's fee proceedings that would have given the trial court the authority under the second clause of § 46b-62 to order them to pay the attorney's fees incurred by the defendant.

appointing an attorney for the minor children for a proceeding intended solely to address the matter of attorney's fees.

We previously have discussed § 46b-54, under which "[t]he court may appoint counsel for any minor child . . . if the court deems it to be in the best interests of the child . . . . The appointment of counsel lies firmly within the trial court's discretion in the best interests of the child. . . . Counsel may also be appointed when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . . The statute further provides that [c]ounsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child. . . . The purpose of appointing counsel for a minor child in a dissolution action is to ensure independent representation of the child's interests, and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation. . . . The opinion of counsel is not binding on the trial court." (Citations omitted; internal quotation marks omitted.) *Schult* v. *Schult*, 241 Conn. 767, 778, 699 A.2d 134 (1997); see also *Ireland* v. *Ireland*, 246 Conn. 413, 437–39, 717 A.2d 676 (1998) (describing advocacy responsibilities of attorney for minor child).

In the present case, we conclude that the trial court abused its otherwise substantial discretion by appointing an attorney for the minor children. The trial court made clear that it was appointing Wieler solely for the purpose of the attorney's fee dispute, over the objection of the plaintiffs, and not in connection with the merits

of the appeal then pending before the Appellate Court.[20] As the plaintiffs point out, the minor children had nothing more than a tangential interest in the result of the attorney's fee proceeding, and no other matters relating directly to their support, custody and visitation were at issue. Cf. *Salvio* v. *Salvio*, 186 Conn. 311, 324–25, 441 A.2d 190 (1982) (children's savings account trusts were marital property, and because minor beneficiaries "had acquired no legal interest in the funds on deposit, they were not necessary parties for the purpose of establishing the trial court's jurisdiction over those accounts," and existence of accounts did not compel appointment of attorney for minor child). Moreover, the trial court's appointment of Wieler to serve as attorney for the minor children was particularly unfortunate given the plainly strained finances of all the parties to this case, including the plaintiffs.[21] Cf. *Yontef* v. *Yontef*, 185 Conn. 275, 284, 440 A.2d 899 (1981) ("[f]or the future, we suggest that, in the absence of strong countervailing considerations such as physical urgency *or financial stringency*, the better course is to appoint independent counsel whenever the issue of child custody is seriously contested" [emphasis added]). Indeed, the trial court's abuse of discretion further is evidenced by the fact that the court itself acknowledged in a later

[20] At the request of Wieler, who sought to clarify her status in the case, specifically regarding whether she was an attorney for the minor children or a guardian ad litem; see *Schult* v. *Schult*, supra, 241 Conn. 779–80; the trial court confirmed that Wieler correctly understood her responsibility "to submit on the papers legal argument as to the interest of the children on the pending motion for the fees and costs to defend the appeal." The trial court further agreed with Wieler's position that, "[she is] not in on the appeal that's currently pending. . . . [She is] appointed to weigh in on the issue of the fees to defend the appeal [of the dismissal]."

[21] The financial affidavits reveal that the plaintiffs have a combined net weekly income of $1099, and the defendant has a net weekly income of $1005. In addition to their regular living expenses, both parties are heavily encumbered with a variety of debt, both secured and unsecured, including the defendant's student loans, both parties' credit card debts, each in excess of $20,000, as well as automobile payments.

articulation that its decision was not materially impacted by the memorandum of law that Wieler submitted in support of the defendant's interpretation of § 46b-62.[22] Accordingly, because the only question remaining in the attorney's fee proceeding was a legal issue in which the children did not have a direct interest, we conclude that the trial court abused its discretion by appointing an attorney for the minor children.

Having concluded that the trial court improperly appointed an attorney for the minor children in this case, we next turn to the appropriate remedy. The plaintiffs request a refund of the $2880 that the trial court ordered them to pay to Wieler. Although the defendant does not oppose, or even acknowledge, the plaintiffs' request for a refund, we decline to order that remedy at this time because further proceedings are necessary to balance the various equities involved in compensating the plaintiffs for the funds that they were inappropriately ordered to expend, while also ensuring that Wieler is reasonably compensated for the time that she was required to devote to this case after her appointment by the trial court. The record simply does not provide us with enough information properly to consider the propriety of a refund of attorney's fees as an appellate remedy, or to entertain other sources from which Wieler may be compensated.[23] Accordingly, without the benefit

[22] The trial court's statement in its articulation aside, it is evident from the record that the value added to the proceedings by the attorney for the minor children was minimal. Notwithstanding her $3200 retainer, Wieler submitted only a five page memorandum of law that in essence was an amicus curiae brief in support of the defendant. We therefore disagree with the defendant's contention that the trial court's articulation renders harmless any impropriety in appointing the attorney for the minor children. Specifically, the parties' financial situation; see footnote 21 of this opinion; as well as Wieler's limited participation, renders the appointment and the attendant $3200 attorney's fee, the vast majority of which was paid by the plaintiffs, not merely harmless error.

[23] This void in the record might well be attributed to the fact that it is unclear whether Wieler is aware of the plaintiffs' request for a refund of the fees that they had paid her. Specifically, Wieler is not listed as counsel

of a remand, we are unable at this time to direct the relief requested herein.

The judgment is reversed and the case is remanded to the trial court with direction to deny the defendant's motion for attorney's fees, to vacate the sua sponte appointment of an attorney for the minor children and for further proceedings in accordance with the preceding paragraph of this opinion.

In this opinion the other justices concurred.

of record on either the docketing statement filed by the plaintiffs pursuant to Practice Book § 63-4 (a) (4), or on the E-Services cover sheet to the trial court file. Moreover, although the file includes the November 7, 2006 form order appointing Wieler to serve as attorney for the minor children, it does not indicate that she filed an appearance to that effect, and it appears that the parties have not included Wieler on their mailing certifications of the vast majority of the papers filed in this case, both at trial and on appeal. Although Wieler has notice of the existence of this appeal, because she was included on the certification of the printed record, the plaintiffs' certification of their brief nevertheless indicates that they did not send her a copy of it, wherein they specifically request a fee refund. Accordingly, we decline to proceed further without first ensuring that Wieler has had an appropriate opportunity to participate herein.