RENAISSANCE MANAGEMENT COMPANY, INC.,
ET AL. *v.* CONNECTICUT HOUSING
FINANCE AUTHORITY
(SC 17593)

Borden, Katz, Palmer, Zarella and Mack, Js.

---

228

Argued October 19, 2006—officially released February 13, 2007

*John R. Williams*, for the appellants (plaintiffs).

*Charles L. Howard*, with whom were *Derek L. Mogck*, and, on the brief, *Sheila A. Huddleston*, for the appellee (defendant).

*Opinion*

BORDEN, J. The plaintiffs, Renaissance Management Company, Inc., Renaissance Hill Limited Partnership,

BHP Limited Partnership, Capitol Plaza Associates Limited Partnership, GAB Hill Limited Partnership and WCH Limited Partnership, appeal[1] from the judgment of the trial court rendered in favor of the defendant, Connecticut Housing Finance Authority. The plaintiffs claim that the trial court improperly denied their application for an injunction requiring the defendant to consent to the plaintiffs' proposed prepayment of the mortgages obtained by the plaintiffs through the defendant. We disagree and, accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. The plaintiffs each own or manage affordable housing projects, consisting of rental units for families and persons of low and moderate income, in the New Haven area. The defendant is a public instrumentality and political subdivision of the state, established for the purpose of alleviating the shortage of housing for low and moderate income families and persons in the state. General Statutes §§ 8-244 and 8-250. In furtherance of that purpose, one of the powers granted to the defendant is the power to provide financing to developers of affordable housing. General Statutes § 8-250. On various dates subsequent to October 1, 1978, the plaintiffs borrowed money from the defendant, secured by mortgages on the properties in question, in order to finance their affordable housing projects. In 2004, alleging that the properties were operating at a loss, the plaintiffs applied to the defendant for consent to the prepayment of their loans. Relying on General Statutes § 8-253a (1),[2] the defendant

[1] The plaintiffs appealed to the Appellate Court from the judgment of the trial court. We subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 8-253a (1) provides: "A loan hereunder may be prepaid after a period of twenty years or sooner with the permission of the authority; provided, nonprofit mortgagors and mortgagors to whom loans are made on or after October 1, 1978, may prepay their loans prior to maturity only with the consent of the authority. The authority shall grant such consent if

withheld consent for prepayment of the loans, and offered several reasons for its decision. One reason was the continuing acute need for low and moderate income housing in the New Haven area.[3]

The plaintiffs subsequently brought this action for injunctive relief in the Superior Court, seeking both a temporary and permanent injunction requiring the defendant to grant consent to the prepayment of the plaintiffs' loans. Following a court trial, the trial court rendered judgment in favor of the defendant, concluding that § 8-253a (1) did not require the defendant to grant consent, and that the defendant did not breach the implied covenant of good faith and fair dealing by withholding consent. This appeal followed.

I

The plaintiffs first claim that the trial court improperly concluded that § 8-253a (1) did not require the defendant to grant consent to the plaintiffs' prepayment of their loans. We disagree.

We first set forth the appropriate standard of review. The plaintiffs sought a mandatory injunction, which "is a court order commanding a party to perform an act. Black's Law Dictionary (6th Ed. 1990); H. McClintock, Principles of Equity (2d Ed. 1948) § 15, p. 32." *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 652, 646 A.2d 133 (1994). A party bears a heavy burden in showing that a mandatory injunction should be granted. This is because "[m]andatory injunctions are . . . disfavored as a harsh remedy and are used only with caution and in compelling circumstances." (Internal quotation marks omitted.) *Cheryl Terry Enterprises,*

it finds (A) that it may reasonably be expected that the prepayment of the loan will not result in a material escalation of rents charged to occupants of the project; and (B) that the need for low and moderate income housing in the area concerned is no longer acute."

[3] The plaintiffs concede that they have not met this prong of § 8-253a (1).

*Ltd.* v. *Hartford*, 270 Conn. 619, 650, 854 A.2d 1066 (2004). Moreover, "[a] prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Internal quotation marks omitted.) *Maritime Ventures, LLC* v. *Norwalk*, 277 Conn. 800, 807–808, 894 A.2d 946 (2006). The plaintiffs claim that the trial court misinterpreted § 8-253a (1) in denying the requested injunctive relief. Therefore, our inquiry focuses on whether the trial court's decision was based on an erroneous statement of the law.

In answering that question, it is helpful initially to identify what is *not* at issue in this appeal. The parties agree that the defendant's consent is a necessary prerequisite for the prepayment of the plaintiffs' loans. It also is undisputed that the plaintiffs are not nonprofit entities. The issue is whether, under the circumstances of the present case, § 8-253a (1) *requires* that the defendant grant its consent, or, whether the statute commits that decision to the discretion of the defendant.

Whether the defendant was required, under § 8-253a (1), to consent to the prepayment of the plaintiffs' loans is a question of statutory interpretation, over which our scope of review is plenary. See *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 8, 885 A.2d 1219 (2006). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) Id. As always, we begin with the language of the statute.[4]

---

[4] We are mindful of the fact that General Statutes § 1-2z requires that, before we go beyond the text of a statute to determine its meaning, we first must determine that it is not plain and unambiguous. See *Bell Atlantic*

Section 8-253a (1) provides: "A loan hereunder may be prepaid after a period of twenty years or sooner with the permission of the authority; provided, nonprofit mortgagors and mortgagors to whom loans are made on or after October 1, 1978, may prepay their loans prior to maturity only with the consent of the authority. The authority shall grant such consent if it finds (A) that it may reasonably be expected that the prepayment of the loan will not result in a material escalation of rents charged to occupants of the project; and (B) that the need for low and moderate income housing in the area concerned is no longer acute." That statute is part of the Connecticut Housing Finance Authority Act (act); General Statutes § 8-241 et seq.; and imposes several conditions before a mortgagor who has obtained a loan from the defendant pursuant to the act may prepay the loan. The first clause of the first sentence of § 8-253a (1) provides that the defendant's consent, or "permission," is necessary for any mortgagor to be able to prepay its loan prior to twenty years after the loan was made. Under the proviso set forth in the second clause of the first sentence, however, if a mortgagor seeks prepayment at any time after twenty years and before maturity, the prerequisites for prepayment vary depending on whether the loan was made before or after October 1, 1978, and whether the borrower was a nonprofit organization. Nonprofit organizations must obtain the defendant's consent in order to prepay a loan, regardless of what year the loan was made. For-profit entities that obtained a loan on or after October 1, 1978, also must obtain the defendant's consent before prepaying a loan obtained under the act. For-profit entities that obtained a loan prior to October 1, 1978, need not obtain the defendant's consent before prepaying a

*NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 250–51 n.13, 869 A.2d 611 (2005). The defendant contends that the language is plain and unambiguous. We disagree.

loan. This first sentence of the statute does not set forth any limits on the defendant's authority to grant or withhold its consent to the prepayment of loans made pursuant to the act.

Because the plaintiffs all are "mortgagors to whom loans are made on or after October 1, 1978"; General Statutes § 8-253a (1); the parties agree that the plaintiffs must obtain the defendant's consent before they may prepay their loans. The parties disagree, however, as to whether the defendant's consent under § 8-253a (1), under the circumstances of the present case, is mandatory or discretionary. The second sentence of the statute identifies the circumstances under which the consent of the defendant is mandatory. That sentence provides that the defendant "shall" consent if the defendant finds that two conditions are met, namely: "(A) that it may reasonably be expected that the prepayment of the loan will not result in a material escalation of rents charged to occupants of the project; *and* (B) that the need for low and moderate income housing in the area concerned is no longer acute." (Emphasis added.) General Statutes § 8-253a (1). Thus, the statute limits the circumstances under which the defendant must grant its consent to those cases in which the defendant makes these two findings. The use of the conjunction "and" implies that when the defendant does not make *both* findings, the granting or withholding of its consent is not mandatory. See *JSF Promotions, Inc.* v. *Administrator, Unemployment Compensation Act,* 265 Conn. 413, 419, 828 A.2d 609 (2003) (use of "and" connecting three prongs of statutory test signifies that all three prongs must be met in order for test to be satisfied); *Correia* v. *Rowland,* 263 Conn. 453, 470 n.16, 820 A.2d 1009 (2003) (noting that, because "cause and prejudice" standard is in conjunctive, petitioner's failure to establish "cause" renders consideration of whether petitioner met "prejudice" standard unnecessary).

The legislative history of § 8-253a (1) supports this conclusion. Prior to 1978, § 8-253a (1) distinguished between for-profit and nonprofit developers of low and moderate income housing.[5] Under the pre-1978 statutory scheme, for-profit developers were able to prepay loans that were more than twenty years old without first obtaining the defendant's consent; nonprofit developers, however, were required to obtain the consent of the defendant for prepayment of loans, even after the twenty year mark had passed. The statute was amended in 1978 to eliminate the distinction between nonprofit and for-profit developers, requiring both nonprofit developers and for-profit developers who obtained their loans on or after October 1, 1978, to obtain the consent of the defendant for prepayment of all loans, including loans that are more than twenty years old. See Public Acts 1978, No. 78-150. In discussion of the amendment in the Senate, Senator Douglas T. Putnam stated: "This law, as it currently stands, says that with the approval of [the defendant], you can repay your mortgage in less than 20 years. And at that time, afterwards, you can repay it at your [discretion]. We are now going to change the law and make it administrative, where the [defendant] can insist that you not repay the loan in 20, 25, 30 or 40 years, *at their discretion*." (Emphasis added.) 21 S. Proc., Pt. 3, 1978 Sess., p. 872. Thus, the legislative history is consistent with the most logical interpretation

---

[5] Prior to its amendment by Public Acts 1978, No. 78-150, General Statutes (Rev. to 1977) § 8-253a (1), as amended by Public Acts 1977, No. 77-316, § 6, provided: "In addition to the terms and conditions set forth in section 8-253, loans made by the authority hereunder shall also be subject to the following terms and conditions: (1) A loan hereunder may be prepaid after a period of twenty years or sooner with the permission of the authority; provided, nonprofit mortgagors may prepay their loans prior to maturity only with the consent of the authority. The authority shall grant such consent if it finds (A) that it may reasonably be expected that the prepayment of the loan will not result in a material escalation of rents charged to occupants of the project; and (B) that the need for low and moderate income housing in the area concerned is no longer acute."

of the language of the statute, namely, that, generally speaking, and in the absence of the two specified preconditions, the defendant's consent is discretionary rather than mandatory.

This interpretation of § 8-153a (1), namely, that, in the absence of circumstances rendering the consent of the defendant mandatory under the statute, the defendant nevertheless retains discretion to withhold or to grant its consent to the prepayment of loans made pursuant to the act, is consistent with the broad grant of power to the defendant by the legislature in the act. That broad grant of authority is evidenced in various provisions within the act. For example, General Statutes § 8-242, sets forth the policies underlying the act and the public purposes served by the act. Those purposes include the following: preventing the "recurrence of slums and blight"; alleviating the shortage of housing for low and moderate income families and persons by various means, including lowering the cost of mortgage financing in order to "encourage the development and reduce the cost of housing for low and moderate income families and persons"; providing state financial assistance for housing for such families; and, "protect[ing] Connecticut residents from further increases in energy costs by providing state financial assistance for the purchase, construction and installation in new and existing buildings of energy conservation measures and renewable energy systems . . . ." General Statutes § 8-242. The statute further provides: "To achieve such purposes for the foregoing reasons, the General Assembly determines that the Connecticut Housing Finance Authority should be provided with the additional powers set forth in subsections (34) and (36) of section 8-250, subsection (b) of section 8-251 and subdivision (4) of subsection (a) of section 8-258 and that the expenditure of public moneys therefor constitutes a serving of

a needed public purpose and is in the public interest. . . ." General Statutes § 8-242.

Section 8-250 (34) (1), in relevant part, grants the defendant the power "[t]o establish a program to finance urban area mortgages and to make, enter into and enforce all contracts or agreements necessary, convenient or desirable with respect thereto . . . ." Section 8-250 (36) sets forth the defendant's power to finance project costs for energy conservation measures and renewable energy systems, and includes the provision that "[t]he authority may prescribe loan conditions and loan eligibility criteria consistent with state policy. . . ."

Other provisions within § 8-250 grant similarly broad powers to the defendant. For example, § 8-250 (16) grants the defendant the power "[t]o make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this chapter, including contracts or agreements with qualified financial institutions for the servicing and processing of mortgage loans pursuant to this chapter . . . ." Perhaps the broadest grant of power is set forth in subsection (30) of § 8-250, which grants the defendant the power "[t]o do all acts and things necessary or convenient to carry out the purposes of this chapter and the powers expressly granted by this chapter . . . ."

We therefore examine the contours of the defendant's power pursuant to § 8-253a within the context of this broad grant of power by the legislature. Section 8-253a sets forth specific circumstances under which the defendant's consent is mandated. That provision does not expressly state, however, that the defendant has the power, absent the circumstances triggering its mandatory consent, to exercise its discretion to grant or to withhold its consent to the prepayment of a loan made

pursuant to the act. Given the broad grant of power by the legislature to the defendant, and given the language of the first sentence of § 8-253a, which suggests that the defendant may grant its consent even when such consent is not required by statute, the most reasonable and consistent interpretation of § 8-253a is that, when the defendant has not made the requisite findings rendering its consent mandatory, it nevertheless retains the power to exercise its discretion in granting or withholding consent to the prepayment of loans made pursuant to the act.

We turn now to the question of whether the plaintiffs have established that the defendant made the requisite findings rendering its consent to the prepayment of the loans mandatory. The plaintiffs have conceded that one of the preconditions required to render the defendant's consent mandatory was not met. Specifically, the plaintiffs admit that the need for affordable housing in the New Haven area remains acute. See General Statutes § 8-253a (1) (B). They have not, therefore, made the required showing to require the defendant to consent to the prepayment of the plaintiffs' loans. Consequently, the decision of whether to grant consent to the prepayment of the plaintiffs' loans was a matter committed to the discretion of the defendant. Additionally, the plaintiffs have presented no evidence that the defendant abused its discretion in withholding its consent. Accordingly, we conclude that the defendant's discretionary decision to withhold consent to the prepayment of the plaintiffs' loans was proper.

The plaintiffs contend, nevertheless, that § 8-242, which sets forth the policy of the act, when read together with § 8-253a (1), demonstrates that § 8-253a (1) was not intended to yield the result of requiring an affordable housing developer to pay a rate of interest

substantially higher than the market rate.[6] The plaintiffs point specifically to the portion of § 8-242 that provides that "it is imperative that the cost of mortgage financing, a major factor materially affecting the supply and cost of housing, be made lower in order to encourage the development and reduce the cost of housing for low and moderate income families and persons . . . ." The plaintiffs' suggested interpretation of § 8-242, however, would require rendering the second clause of the second sentence of § 8-253a (1) meaningless. Essentially, the plaintiffs ask this court to rewrite § 8-253a (1) to eliminate the requisite finding that the need for affordable housing in the area in question no longer remains acute, whenever the mortgage rate paid by the affordable housing developer is "substantially" above the market rate. As we have repeatedly stated, however, "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his

---

[6] General Statutes § 8-242 provides in relevant part: "It is found and declared that there exists in the state and will exist in the future a serious shortage of housing for low and moderate income families and persons; that this shortage has contributed and will contribute to the persistence of slums and blight and will tend to perpetuate the concentration of families and persons of low and moderate income in the older urban areas of the state; and that this shortage has been a major contributing factor to the deterioration in the quality of environment and living conditions of large numbers of the citizens of Connecticut. It is further found and declared that it is imperative that the cost of mortgage financing, a major factor materially affecting the supply and cost of housing, be made lower in order to encourage the development and reduce the cost of housing for low and moderate income families and persons, that the supply of housing for families and persons displaced by public action or disaster be increased, and that private enterprise and public agencies be encouraged and assisted to build and rehabilitate well planned, well designed housing which will be made available to house families and persons of low and moderate income and will prevent the recurrence of slums and blight. . . . To achieve such purposes for the foregoing reasons, the General Assembly determines that the Connecticut Housing Finance Authority should be provided with the additional powers set forth in subsections (34) and (36) of section 8-250, subsection (b) of section 8-251 and subdivision (4) of subsection (a) of section 8-258 and that the expenditure of public moneys therefor constitutes a serving of a needed public purpose and is in the public interest. . . ."

tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 333, 898 A.2d 170 (2006).

The purpose of the act is to address the "serious shortage of housing for low and moderate income families and persons . . . ." General Statutes § 8-242. In order to achieve that overarching purpose, the legislature delegated its power to the defendant, providing specifically: "To achieve such purposes for the foregoing reasons, the General Assembly determines that the Connecticut Housing Finance Authority should be provided with the additional powers set forth in subsections (34) and (36) of section 8-250, subsection (b) of section 8-251 and subdivision (4) of subsection (a) of section 8-258 . . . ." General Statutes § 8-242. One of the powers granted to the defendant, specifically to achieve the purposes outlined in § 8-242, is the power "[t]o establish a program to finance urban area mortgages and to make, enter into and enforce all contracts or agreements necessary, convenient or desirable with respect thereto . . . ." General Statutes § 8-250 (34) (1). Thus, § 8-242 makes clear that the broad delegation of power to the defendant is a necessary part of achieving the overarching purpose of the act. To interpret the language of § 8-242 simultaneously to strip the defendant of its authority to grant or to withhold its consent to prepayment of a loan obtained pursuant to the act, merely because the affordable housing developer may obtain a more favorable mortgage rate from a private lender, is inconsistent with that delegation of authority and would not be consistent with the well established

rule of statutory interpretation requiring that we presume that the legislature created a "harmonious and consistent body of law." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, supra, 278 Conn. 333.

II

Because we conclude that the decision of whether to grant its permission to the prepayment of the plaintiffs' loans was one committed to the defendant's discretion, we next address the plaintiffs' claim that the trial court improperly concluded that the defendant did not violate the implied covenant of good faith and fair dealing by withholding its consent to the prepayment of the plaintiffs' loans. We disagree.

"[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Citations omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004).

Whether a party has acted in bad faith is a question of fact, subject to review only for clear error. *Habetz* v. *Condon*, 224 Conn. 231, 237, 618 A.2d 501 (1992); *State* v. *Colon*, 272 Conn. 106, 291–92, 864 A.2d 666

(2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). In concluding that the plaintiffs had not established that the defendant had acted in bad faith in withholding its consent to prepayment of the plaintiffs' loans, the trial court found that the plaintiffs had not sufficiently satisfied the defendant that the commitment from the alternative lender would accomplish the defendant's mission to "alleviate the shortage of housing for low and moderate income families and persons in this state . . . ." General Statutes § 8-250. The court also stated that it was not satisfied that the defendant's duties of supervising the management and maintenance of the plaintiffs' properties would be adequately protected in the event of a refinancing. Given these findings by the trial court, we cannot conclude that its finding that the plaintiffs had failed to establish that the defendant had acted in bad faith was clear error.

The judgment is affirmed.

In this opinion the other justices concurred.