WOODROW WILSON OF MIDDLETOWN, LLC *v.*
CONNECTICUT HOUSING FINANCE
AUTHORITY
(SC 18179)

Rogers, C. J., and Katz, Palmer, Vertefeuille and McLachlan, Js.

Argued October 23, 2009—officially released February 2, 2010

*David A. Haught*, with whom was *Lorinda S. Coon*, for the appellant (plaintiff).

*Charles L. Howard*, with whom was *Sheila A. Huddleston*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Woodrow Wilson of Middletown, LLC, appeals from the judgment of the trial court determining that the defendant, the Connecticut Housing Finance Authority, did not breach its contract with the plaintiff by refusing to consent to the plaintiff's request to prepay its mortgage from the defendant under General Statutes § 8-253a.[1] On appeal, the plaintiff claims that the trial court misinterpreted § 8-253a (1) and improperly failed to conclude that the defendant was required to consent to the plaintiff's prepayment of the mortgage because the requirement of § 8-253a (1) (B) had been satisfied. The defendant responds that the trial court properly interpreted § 8-253a (1) (B) and that the trial court's conclusion that the plaintiff had failed to demonstrate that the requirement for prepayment had been satisfied is supported

---

[1] General Statutes § 8-253a provides in relevant part: "In addition to the terms and conditions set forth in section 8-253, loans made by the authority hereunder shall also be subject to the following terms and conditions:

"(1) A loan hereunder may be prepaid after a period of twenty years or sooner with the permission of the authority; provided, nonprofit mortgagors and mortgagors to whom loans are made on or after October 1, 1978, may prepay their loans prior to maturity only with the consent of the authority. The authority shall grant such consent if it finds (A) that it may reasonably be expected that the prepayment of the loan will not result in a material escalation of rents charged to occupants of the project; and (B) *that the need for low and moderate income housing in the area concerned is no longer acute.* . . ." (Emphasis added.)

by the evidence. We agree with the defendant and, accordingly, we affirm the judgment of the trial court.[2]

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. In 1998, the defendant sold to the plaintiff an existing apartment building in Middletown, a portion of which was comprised of rental units for persons of low and moderate income. Pursuant to General Statutes § 8-253, the plaintiff financed the purchase with a mortgage from the defendant. At the closing, the plaintiff signed a promissory note and a thirty year mortgage note to the defendant, in addition to a covenant of conditions and regulatory agreement (regulatory agreement) pursuant to which the plaintiff agreed to be regulated by the defendant with regard to the property. The note provided that it could not be prepaid prior to September 9, 2016, without the prior written consent of the defendant and, further, that any prepayment would be subject to the "statutory, regulatory and policy requirements and limitations" of the defendant. The regulatory agreement required that for a period of approximately eighteen years, the plaintiff must rent at least 20 percent of the apartments to tenants of low and moderate income. Those tenants are defined in the regulatory agreement as individuals and families whose annual income is 80 percent or less than the "area median gross income" as determined in certain federal regulations.

In July, 2002, the plaintiff attempted to prepay the balance of the mortgage; the defendant, however,

[2] On appeal, the plaintiff also claims that the trial court improperly determined that the defendant did not breach its duty of good faith and fair dealing. At oral argument in this court, the plaintiff conceded that if we agree with the trial court's interpretation of § 8-253a (1) (B), we need not reach this issue. Because we conclude that the trial court properly interpreted § 8-253a (1) (B), we do not reach the plaintiff's claim that the defendant breached its duty of good faith and fair dealing. Accordingly, the question of whether a housing authority's findings under § 8-253a (1) (B) could ever constitute a breach of its duty of good faith and fair dealing is not before us today, and we expressly do not decide that issue.

refused to consent to the offered prepayment. Thereafter, the plaintiff brought this action against the defendant, alleging, inter alia, breach of contract and breach of the covenant of good faith and fair dealing.[3] In its prayer for relief, the plaintiff sought mandatory injunctive relief, money damages, and attorney's fees. Following a trial, the trial court determined that the plaintiff had not established either its breach of contract claim or its claim regarding the breach of the covenant of good faith and fair dealing. Specifically with respect to the breach of contract claim, the trial court determined that the defendant was not required to consent to the prepayment of the loan because the plaintiff had not demonstrated that the requirement for prepayment set forth in § 8-253a (1) (B) had been satisfied, namely, that "the need for low and moderate income housing *in the area concerned* is no longer acute."[4] (Emphasis added.)

[3] The plaintiff also alleged breach of fiduciary duty, violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and negligence. The trial court subsequently granted the defendant's motion for summary judgment on these counts and the plaintiff has not appealed from that decision. Those counts therefore are not at issue in this appeal.

[4] Although the defendant apparently did not issue written notice denying the plaintiff's request and therefore did not make express findings as to whether both or only one of the requirements of § 8-253a (1) for prepayment had not been met, the parties agreed that the sole issue before the trial court was whether the plaintiff had demonstrated that "the need for low and moderate income housing in the area concerned is no longer acute." General Statutes § 8-253a (1) (B).

In one footnote in its brief, the plaintiff also asserts that there was no evidence at trial demonstrating that there is an acute need for affordable housing in the Hartford metropolitan statistical area. According to the trial court's memorandum of decision, the plaintiff did not dispute that there was an acute need for such housing at trial. There is no motion for reconsideration to suggest that the plaintiff disputed this characterization. Moreover, the plaintiff does little more than provide this conclusory assertion with regard to this claim. Therefore, this claim has been inadequately briefed and we decline to address it. See, e.g., *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) ("We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." [Citations omitted; internal quotation marks omitted.]). Accordingly, our review is limited to whether the trial court properly interpreted the term "in the area concerned" in § 8-253a (1) (B).

The trial court also summarily rejected the plaintiff's good faith and fair dealing claim. See footnote 2 of this opinion. This appeal followed.[5]

This appeal principally turns on the proper interpretation of the words "in the area concerned" in § 8-253a (1) (B). On appeal, the plaintiff claims that the trial court improperly determined that this phrase refers to an area known as "the Hartford metropolitan statistical area." The plaintiff contends that "the area concerned" in § 8-253a (1) (B) is the market area from which the apartment complex draws its tenants, in this case, Middlesex County.[6] In response, the defendant asserts that the trial court properly agreed with the defendant's interpretation of the phrase "the area concerned" as the Hartford metropolitan statistical area, and, therefore, properly concluded that the plaintiff did not meet the requirements of § 8-253a (1) (B).

We begin by setting forth the appropriate standard of review. The resolution of this appeal requires us to interpret § 8-253a (1) (B). "Well settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself

---

[5] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[6] At trial, the plaintiff seemed to assert that "the area concerned" pursuant to § 8-253a (1) (B) was the city of Middletown, not Middlesex County. Because we conclude that the Hartford metropolitan statistical area is the appropriate "area concerned," we need not address the plaintiff's claims in the trial court with regard to that statutory phrase.

and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 531, 970 A.2d 57 (2009). "When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 233, 983 A.2d 1 (2009).[7]

We begin our analysis with the relevant statutory text. Section 8-253a provides in relevant part: "In addition to the terms and conditions set forth in section 8-253, loans made by the authority hereunder shall also be subject to the following terms and conditions: (1) A loan hereunder *may* be prepaid after a period of twenty years or sooner with the permission of the authority; provided, nonprofit mortgagors and mortgagors to whom loans are made on or after October 1, 1978, may prepay their loans prior to maturity only with the consent of the authority. The authority *shall* grant such consent if *it*

---

[7] The defendant claims that we should apply the standard of review applicable to an action for a mandatory injunction because the plaintiff requested, inter alia, an order directing the defendant to authorize prepayment of the note in its prayer for relief. The plaintiff does not seek only injunctive relief; compare *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 230–31, 915 A.2d 290 (2007); and its entitlement to any relief at all depends on the proper interpretation of § 8-253a (1) (B). Our review therefore is plenary.

*finds* (A) that it may reasonably be expected that the prepayment of the loan will not result in a material escalation of rents charged to occupants of the project; and (B) that the need for low and moderate income housing in the area concerned is no longer acute. . . ." (Emphasis added.) Section 8-253a does not define the term "the area concerned," nor is a definition found elsewhere in the Connecticut Housing Finance Authority Act (act), General Statutes § 8-241 et seq. The language of the statute is instructive, however, in that it requires the defendant to consent to prepayment of the mortgage only "if *it finds*" that both of the conditions for prepayment are met. (Emphasis added.) General Statutes § 8-253a (1) (B). The text of the statute clearly indicates that the legislature chose to give the defendant the sole authority, in its expertise, to determine whether a mortgagor has met the requirements necessary to receive the consent to prepay.

In accordance with § 1-2z, we next turn to the relevant statutory scheme of which § 8-253a is a part, namely, the remaining sections of the act. The text of these relevant provisions confirms our understanding that the legislature intended to defer to the defendant to determine whether a mortgagor has met the requirements for the defendant's consent to prepayment. As we recently have recognized, "[t]he purpose of the act is to address the 'serious shortage of housing for low and moderate income families and persons . . . .' General Statutes § 8-242." *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 239, 915 A.2d 290 (2007). In order to achieve that purpose, the legislature has given the defendant the authority "[t]o do all acts and things necessary or convenient to carry out the purposes" of the act. General Statutes § 8-250 (30). Moreover, the legislature has provided that the defendant's powers "shall be interpreted broadly to effectuate the purposes [of the act] and shall

not be construed as a limitation of powers." General Statutes § 8-262; see also *Renaissance Management Co. v. Connecticut Housing Finance Authority,* supra, 239 ("the broad delegation of power to the defendant is a necessary part of achieving the overarching purpose of the act").

Although the language of § 8-253a (1) (B) and its relationship to other provisions of the act show that the legislature intended to defer to the defendant's authority and expertise in determining whether the defendant was required to consent to prepayment of the mortgage, we nevertheless cannot conclude that it is plain and unambiguous with regard to the meaning of "the area concerned . . . ." Accordingly, consistent with § 1-2z, we turn to extratextual sources to determine whether the trial court properly interpreted the meaning of the statute.

The legislative history surrounding the enactment of § 8-253a is minimal, and unfortunately, there is no legislative history evidencing the legislature's intent with regard to the phrase "the area concerned" in § 8-253a (1) (B). We therefore turn to other extratextual evidence regarding the meaning of the statute.

When a state statute is ambiguous and in need of construction, this court has frequently looked to analogous federal statutes for guidance in the interpretation of our state act. See, e.g., *Horton* v. *Meskill,* 187 Conn. 187, 192, 445 A.2d 579 (1982) ("[w]here state precedent is lacking, it is appropriate to look to authorities under the comparable federal [statute]"). In the present case, it is particularly appropriate to look to parallel federal housing statutes for several reasons. First, state and federal housing assistance statutes have the same purpose: ameliorating the shortage of housing for low and moderate income persons and families. See General Statutes § 8-242; 42 U.S.C. §§ 3531 and 3532. Second,

the defendant's undertakings and responsibilities in the housing area are clearly interrelated to federal housing initiatives. See, e.g., General Statutes § 8-250 (4) (authorizing defendant to enter into agreements with federal agencies for purpose of planning, regulating and providing for financing of housing). The regulatory agreement in the present case applicable to the plaintiff's apartments incorporates several federal housing statutes by reference. For example, the regulatory agreement requires that tenant income be determined by reference to federal law: "Income and area median gross income shall be determined in a manner consistent with determinations of lower income families under [§] 8 of the United States Housing Act of 1937, as amended [42 U.S.C. § 1437f]." Thus, it is particularly appropriate to look to federal statutes and regulations that relate to low and moderate income housing for guidance in interpreting § 8-253a (1) (B).

The evidence at trial in the present case demonstrated that one of the reasons the defendant relies on the pertinent metropolitan statistical area as "the area concerned" for assessing requests for prepayment under § 8-253a is because the federal agency whose purpose similarly is to finance low and moderate income housing, the Department of Housing and Urban Development (HUD), utilizes the metropolitan statistical area when making various calculations. Most significantly, HUD uses the metropolitan statistical area as the appropriate "housing market area" when it decides mortgage prepayment requests for HUD mortgages in metropolitan areas. Section 4108 (a) of title 12 of the United States Code, captioned "[a]pproval," provides in relevant part: "The Secretary [of HUD] may approve a plan of action that provides for termination of the low-income affordability restrictions through prepayment of the mortgage . . . only upon a written finding that . . . (2) the supply of vacant, comparable housing is sufficient to ensure

that such prepayment will not materially affect—(A) the availability of decent, safe, and sanitary housing affordable to low-income and very low-income families or persons in the area that the housing could reasonably be expected to serve; (B) the ability of low-income and very low-income families or persons to find affordable, decent, safe, and sanitary housing near employment opportunities; or (C) the housing opportunities of minorities in the community within which the housing is located." The federal regulation implementing 12 U.S.C. § 4108 provides in relevant part as follows: "For purposes of approving a plan of action under [12 U.S.C. § 4108], the [federal housing commissioner] shall find that the requirements of paragraph (a) (2) of this section have been met if the project is located in a housing market area which has been determined to have an adequate supply of decent, safe and sanitary rental housing . . . . (1) For purposes of this section, a 'housing market area' is defined as an area where rental housing units of similar characteristics are in relative competition with each other. If a project is in a non-metropolitan area, the housing market area is the county in which the project is located. *If the project is located in a metropolitan area the housing market area is the primary metropolitan statistical area . . .* or in the case of very large metropolitan areas, the housing market area may be a portion of the [primary metropolitan statistical area]. . . ." (Emphasis added.) 24 C.F.R. § 248.141 (c).

Our examination of 12 U.S.C. § 4108 and 24 C.F.R. § 248.141 (c) (1) reveals that the factors to be considered for prepayment of HUD mortgages are similar in purpose and scope to those set forth in § 8-253a (1), which is not surprising given the similar purposes of both the federal and state agencies. The defendant therefore reasonably relied on 12 U.S.C. § 4108 and 24

C.F.R. § 248.141 (c) (1) in interpreting the language of § 8-253a (1) (B).[8]

Another reason that the defendant utilizes the metropolitan statistical area as "the area concerned" in § 8-253a (1) (B) is that the defendant employs that area in performing many other calculations related to the low and moderate income housing that it finances. For example, the metropolitan statistical area is used for calculating both the area median income and the maximum rent landlords may charge for regulated housing units if tenants' incomes are below a certain percentage of the area median income. Using the metropolitan statistical area as "the area concerned" in § 8-253a (1) (B) is thus consistent with other financial calculations that the defendant is required to make for the housing that it finances.

Moreover, the evidence at trial revealed that Middletown and the greater Hartford area are factually interconnected in many relevant ways. The plaintiff's own expert witness acknowledged that Middletown is in the greater Hartford labor market and that thousands of people commute from Middletown to work in other towns and cities, including Hartford. The director of planning, conservation and development for the city of Middletown also testified that Middletown is within the Hartford labor market. There also was evidence at trial that the plaintiff primarily advertises its available Middletown apartment units in the Hartford Courant newspaper. The fact that Middletown and the Hartford area are interconnected in terms of the labor market and

---

[8] We also note that the plaintiff relied on 24 C.F.R. § 248.141 (c) (1) in its posttrial memorandum filed in the trial court. Although the plaintiff's position was that because Middletown is "a non-metropolitan area, the housing market area is the county in which the project is located"; 24 C.F.R. § 248.141 (c) (1); the plaintiff's reliance on that regulation is consistent with our conclusion that it is appropriate to look to similar federal statutes and regulations to interpret § 8-253a.

the rental advertising market additionally supports our conclusion that the defendant properly determined that in the present case the Hartford metropolitan statistical area is "the area concerned" for purposes of § 8-253a (1) (B).

Bearing in mind that the language of § 8-253a (1) (B) and the relevant statutory scheme clearly express the legislature's intent that the defendant's powers "shall be interpreted broadly to effectuate the purposes [of the act]"; General Statutes § 8-262; we conclude that the trial court properly agreed with the defendant's interpretation of § 8-253a (1) (B). Accordingly, we further conclude that the trial court properly determined that the defendant did not breach its contract with the plaintiff by failing to consent to its request for mortgage prepayment because the requirements of § 8-253a (1) were not met.

The judgment is affirmed.

In this opinion the other justices concurred.