# STATE OF CONNECTICUT *v.* BENJAMIN LEAK
## (SC 18509)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Argued April 20—officially released July 27, 2010

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether General Statutes (Rev. to 1981) § 53a-47 (b)[1]

---

[1] General Statutes (Rev. to 1981) § 53a-47 (b) provides in relevant part: "Whenever a person is committed for confinement pursuant to subdivision (4) of subsection (a), his confinement shall continue until he is no longer mentally ill to the extent that his release would constitute a danger to himself or others, *provided the total period of confinement*, except as provided in subsection (d) [providing a procedure whereby the state may petition the court for continued commitment of an acquittee who continues to constitute a danger to life or person], *shall not exceed a maximum term fixed by the*

authorized the trial court to order maximum terms of commitment consecutively in imposing a total period of confinement following insanity acquittals for multiple offenses. The defendant, Benjamin Leak, appeals[2] from the judgments of the trial court determining that the maximum terms of commitment for the two criminal cases in which he was found not guilty by reason of mental disease or defect for assault in the first degree, assault in the second degree and possession of a dangerous instrument in a correctional institution, were to be served consecutively, for a total period of confinement of forty-five years. On appeal, the defendant claims that the trial court improperly concluded that the committing court had the authority to impose multiple maximum insanity commitments consecutively under § 53a-47 (b). We disagree with the defendant and, therefore, we affirm the judgment of the trial court.

The record reveals the following undisputed facts, as found by the trial court, and procedural history. On September 14, 1979, the defendant committed an assault

court at the time of confinement, which maximum term shall not exceed the maximum sentence which could have been imposed if the person had been convicted of the offense. . . ." (Emphasis added.) All references in this opinion to § 53a-47 are to the 1981 revision of the statute unless otherwise indicated.

In 1985, the legislature repealed § 53a-47 and replaced it with General Statutes §§ 17-257a to 17-257w, which also created the psychiatric security review board that has had jurisdiction over the defendant's commitment since that time. See Public Acts 1985, No. 85-506, § 31. Specifically, § 53a-47 (b) was repealed and replaced by General Statutes § 17-257c. Thereafter, in 1991, the provisions of § 17-257c were transferred to General Statutes § 17a-582 (e) (1), the current version of § 53a-47 (b). Subsequently, to this date, no substantive changes with any bearing on the merits of this appeal have been made to § 17a-582 (e) (1). Although we consider this appeal under § 53a-47 (b), which was in effect at the time of the defendant's initial commitment, we note that the parties agree that the result would be the same under the current statute, § 17a-582 (e) (1).

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

using a knife and subsequently was charged with assault in the first degree in violation of General Statutes (Rev. to 1979) § 53a-59. On October 21, 1979, while incarcerated at the New Haven correctional center pending disposition of that charge, the defendant assaulted a correctional officer there with a razor knife and, thereafter, was charged with assault in the second degree in violation of General Statutes (Rev. to 1979) § 53a-60 (a) (2) and possession of a dangerous instrument in violation of General Statutes (Rev. to 1979) § 53a-174a (a). On May 8, 1981, the defendant was found not guilty in both criminal cases by reason of mental disease or defect, pursuant to General Statutes (Rev. to 1981) § 53a-13,[3] and was committed by the trial court, *Fishman, J.*, for a sixty day evaluation of dangerousness, to the Connecticut Valley Hospital, pursuant to § 53a-47 (a).[4] Subsequent to this evaluation, and after a hearing

---

[3] General Statutes (Rev. to 1981) § 53a-13 provides in relevant part: "In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. . . ."

[4] General Statutes (Rev. to 1981) § 53a-47 (a) provides: "(1) When any person charged with an offense is acquitted on the grounds of mental disease or defect, the court shall order such person to be temporarily confined in any of the state hospitals for mental illness for a reasonable time, not to exceed ninety days, for an examination to determine his mental condition, except that, if the court can determine, on the basis of the evidence already before it, that such person is not mentally ill to the extent that his release would constitute a danger to himself or others, the court may order his immediate release, either unconditionally or conditionally pursuant to subdivision (2) of subsection (e). (2) The person to be examined shall be informed that, in addition to the examination provided for in subdivision (1), he has a right to be examined during such confinement by a psychiatrist of his own choice. (3) Within sixty days of the confinement pursuant to subdivision (1), the superintendent of such hospital and the retained psychiatrist, if any, shall file reports with the court setting forth their findings and conclusions as to whether such person is mentally ill to the extent that his release would constitute a danger to himself or others. Copies of such reports shall be delivered to the state's attorney or prosecutor and to counsel for such person. (4) Upon receipt of such reports, the court shall promptly schedule a hearing. If the court determines that the preponderance of the evidence at the hearing establishes that such person is mentally ill to the extent that

conducted on January 25, 1982, the trial court, *Fishman, J.*, committed the defendant to the custody of the department of mental health (department), pursuant to § 53a-47 (a). In the two mittimuses prepared by the trial court clerk's office on that date, the defendant's term of commitment was twenty years for the first assault and twenty-five years for the second assault. The two mittimuses were silent, however, as to whether these two terms of commitment were to be served consecutively or concurrently.

Since 1985, when the legislature created the psychiatric security review board (board), which took jurisdiction from the department over the defendant's commitment; see footnote 1 of this opinion; both the state and the defendant acknowledge that they have assumed that the defendant's maximum term of commitment was forty-five years, consisting of the twenty year maximum commitment for the first assault and the twenty-five year maximum commitment for the second assault, to be served consecutively. At the March 16, 2007 mandatory review hearing before the board, however, board chairperson Robert Berger inquired regarding the nature of the defendant's two terms of commitment, querying whether they were to run consecutively or concurrently. Subsequent inquiry and investigation revealed that the oral pronouncement of judgment was not recorded anywhere in the court file, and a transcript of the commitment proceedings on January 25, 1982, or a copy thereof, no longer could be obtained. Furthermore, as stated previously, the two mittimuses prepared by the trial court clerk's office provided no direction as to whether the terms of commitment were to be served consecutively or concur-

his release would constitute a danger to himself or others, the court shall confine such person in a suitable hospital or other treatment facility." All references in this opinion to § 53a-47 (a) are to the 1981 revision of the statute unless otherwise indicated.

rently. Thus, the record was ambiguous regarding the nature of the trial court's January 25, 1982 commitment order.

Thereafter, on April 20, 2007,[5] the state filed a petition for an order of continued commitment pursuant to General Statutes § 17a-593 (c)[6] and, on May 15, 2007, it filed a request for clarification, asking that the mittimus for each file be amended to show that the terms of commitment are to run consecutively, for a total period of confinement of forty-five years. In support of its request, the state first noted that the entry in each of the state's attorney's files made in the normal course of business at the time of commitment showed that such commitments were ordered by the court to run consecutively, for an effective sentence of forty-five years. Further, all of the records created after the defendant's commitment at the Whiting Forensic Division of Connecticut Valley Hospital and its successor administrator, the

---

[5] We note that the date of the state's petition for continued commitment, April 20, 2007, would have been untimely under General Statutes § 17a-593; see footnote 6 of this opinion; if we were to conclude that the committing court was not authorized to sentence the defendant to consecutive terms of commitment, leading to a commitment termination date of January 25, 2007. Conceivably, the state petitioned for continued commitment at such a late date because it became aware of the issue of whether the commitments were to be served consecutively or concurrently only after the board first posited the question at its March 16, 2007 review hearing. After the trial court issued its memorandum of decision, concluding that the committing court had the authority to order consecutive sentences, it dismissed the state's petition. Similarly, because we conclude that the committing court had the authority, under § 53a-47 (b), to order maximum terms of commitment consecutively in imposing a total period of confinement, we do not address the issue of the timeliness of the state's petition for continued commitment.

[6] General Statutes § 17a-593 (c) provides: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

board, showed a total period of confinement of forty-five years. Moreover, the state expressed its understanding that the notes in the public defender's trial file reflected a commitment of forty-five years. In response, the defendant filed a motion to dismiss for lack of subject matter jurisdiction and an application for discharge from the jurisdiction of the board.

The trial court, *Damiani, J.*, held evidentiary hearings on July 3, July 6 and August 9, 2007, to attempt to reconstruct the record of the trial court's oral pronouncement of judgment on January 25, 1982. At the conclusion of these reconstruction hearings, the court concluded: "[I]t was the [committing court's] intention at the time of [commitment] that the mittimus for each file be amended to show that the commitments in each file are to run consecutively to each other for a [*total effective sentence*] of [forty-five] years commitment, which is the total effective sentence [the defendant] could have received for conviction." (Emphasis in original.) Thereafter, the defendant filed a motion to correct an illegal disposition pursuant to Practice Book § 43-22,[7] along with a memorandum of law, specifically contending that consecutive insanity commitments were not authorized under § 53a-47 (b).

The trial court denied both of the defendant's motions, as well as the application for discharge, issuing a memorandum of decision on October 22, 2007, concluding that consecutive commitments, or situations involving a stay of one commitment until the prior one expires by lapse of time, were permitted under § 53a-47 (b), which, in providing for a "total period of confinement," evinced a legislative intent to permit consecutive maximum terms of commitment. Accordingly, the court

---

[7] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

determined that, on the basis of the charges of which the defendant had been acquitted by reason of mental disease or defect, he could have been criminally sentenced to a total effective term of forty-five years imprisonment based upon consecutive sentencing principles. Thus, the maximum "total period of confinement" under § 53a-47 (b) in this case was forty-five years. The trial court also determined that, because under § 53a-47 (b), an acquittee can be discharged before or after the maximum term of commitment, depending upon whether he remains both mentally ill and dangerous, the "total period of confinement" is irrelevant for purposes of the statute.

Thereafter, on November 20, 2007, the court granted the defendant's motion to reargue the matter, specifically to address the meaning of "total period of confinement" as used in § 53a-47 (b), which the court had emphasized in its October 22, 2007 memorandum of decision, and which was a focal point of the court's oral remarks during the October 24, 2007 oral argument.[8] The court adhered, however, to its ruling denying the defendant's motion to correct and related motions and concluded that the committing court had the authority, under § 53a-47 (b), to impose consecutive terms of commitment. This appeal followed.

On appeal, the defendant claims that the trial court improperly concluded that the committing court had the authority under § 53a-47 (b) to impose multiple maximum insanity commitments consecutively. First, the defendant emphasizes the fundamental distinction between incarceration pursuant to a criminal sentence

[8] Apparently unaware that the parties had planned to conduct oral arguments on October 24, 2007, the trial court issued its memorandum of decision solely on the papers. After being made aware of the parties' understanding that oral argument was to occur on that date, however, the court granted the defendant's request for argument and heard the parties argue their respective positions, but ultimately adhered to its original decision.

and commitment following an insanity acquittal, and claims that the logical corollary of such a distinction "render[s] inapplicable the traditional sentencing policies of consecutive and concurrent sentencing" in the commitment context. The defendant also notes that, in placing an outer limit on the maximum term of commitment, that is, the maximum sentence that could have been imposed if the person had been convicted of the offense, the legislature used *singular* phrasing regarding both the maximum " 'sentence' " and " 'offense,' " thus suggesting that it did not intend to authorize a court to impose *multiple* maximum terms of confinement consecutively for multiple offenses. In response, the state contends otherwise, and also claims that, because courts have the inherent common-law authority to stay their judgments, they may impose "consecutive" terms of imprisonment, commitment or other confinement.[9] We agree with the state.

As a preliminary matter, we set forth the applicable standard of review. The resolution of this appeal requires us to interpret § 53a-47 (b). "Well settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo." (Internal quotation marks omitted.) *Woodrow Wilson of Middletown, LLC* v. *Connecticut Housing Finance Authority*, 294 Conn. 639, 644, 986 A.2d 271 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent

---

[9] The state also raises the issue of the subject matter jurisdiction of the trial court to consider the defendant's motion to correct an illegal disposition, pursuant to Practice Book § 43-22. The defendant responded to this issue in his reply brief. We agree with both parties that the trial court had jurisdiction to consider the defendant's motion to correct. See, e.g., *State* v. *Parker*, 295 Conn. 825, 835–40, 992 A.2d 1103 (2010); *State* v. *Lawrence*, 281 Conn. 147, 155–58, 913 A.2d 428 (2007).

intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z[10] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 99–100, 989 A.2d 1027 (2010).

The defendant's argument, in effect, asks us to construe § 53a-47 (b) as having altered the common law, which we cannot do in the absence of a clear legislative mandate. See, e.g., *Fennelly* v. *Norton*, 294 Conn. 484, 504–505, 985 A.2d 1026 (2010). "[W]e are mindful of other rules of statutory construction applicable when determining whether a statute has abrogated the common law. [W]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in

---

[10] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) Id.

In accordance with § 1-2z, we first turn to the language of General Statutes (Rev. to 1981) § 53a-47 (b), which provides in relevant part: "Whenever a person is committed for confinement . . . his confinement shall continue until he is no longer mentally ill to the extent that his release would constitute a danger to himself or others, *provided the total period of confinement*, except as provided in subsection (d), *shall not exceed a maximum term fixed by the court at the time of confinement, which maximum term shall not exceed the maximum sentence which could have been imposed if the person had been convicted of the offense. . . .*" (Emphasis added.) See footnote 1 of this opinion. This language does not explicitly indicate whether the "total period of confinement" may include consecutive confinements for multiple offenses. We conclude, however, that, read in conjunction with General Statutes § 53a-37,[11] § 53a-47 (b) is not ambiguous regarding whether consecutive confinements are authorized. Specifically, the language demonstrates a clear legislative intent to correlate the length of psychiatric commitments to criminal sentences, including up to the criminal sentence's full length. Cf. *State* v. *Long*, 268 Conn. 508, 540,

---

[11] General Statutes § 53a-37 provides in relevant part: "When multiple sentences of imprisonment are imposed on a person at the same time . . . the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other . . . in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. . . ."

847 A.2d 862 ("unlike a civilly committed inmate, an [insanity] acquittee has proven to the fact finder that his mental disease or defect caused him to commit a crime, thereby establishing a legal nexus between the acquittee's mental illness and the criminal act"), cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). This intent thus implies that commitments may be equal to the *total effective sentence* "that could have been imposed if the [acquittee] had been convicted," which, in a case with multiple counts, may include either concurrent or consecutive sentences, or a combination of the two. Under § 53a-37, the sentencing court, if it so desires, may impose consecutive sentences in multiple offense cases. Thus, to construe the "total period of confinement" to include multiple offenses and the possibility of consecutive terms is consistent with the rules of criminal sentencing.[12] Certainly, if the legislature had intended to restrict the total period of confinement to concurrent sentences, it easily could have adopted specific statutory language to do so.

---

[12] We recognize the principle that, "[i]n the absence of a timely designation of the defendant's sentence as concurrent with or consecutive to his prior undischarged term of imprisonment, the common-law rule prevails, and the sentence will be treated as concurrent." *State* v. *Pina*, 185 Conn. 473, 482, 440 A.2d 962 (1981); see also *Grant* v. *Commissioner of Correction*, 87 Conn. App. 814, 818, 867 A.2d 145 (concluding that sentence on murder conviction was to be served concurrently with larceny sentences because "[t]he mittimus [for the murder conviction] does not state whether the sentence was to run concurrent with or consecutive to" larceny sentences), cert. denied, 274 Conn. 918, 879 A.2d 895 (2005). We conclude, however, that this principle is not applicable to the present case. Here, because the mittimuses were silent as to whether the terms of commitment were to be served concurrently or consecutively, the trial court held reconstruction hearings to resolve that ambiguity, and concluded, on the basis of the evidence from those hearings, including the mutual understanding of the parties from the commencement of the commitment, that the commitments were clearly intended by the committing court to be served consecutively. Moreover, the defendant does not dispute this conclusion on appeal but, rather, challenges the trial court's judgment solely on the grounds that the trial court improperly concluded that the committing court did not have the authority, under § 53a-47 (b), to impose multiple maximum commitments consecutively.

The defendant, nevertheless, contends that, because § 53a-47 (b) is written in the singular regarding both the "maximum sentence" and "offense," the legislature did not intend to allow courts to impose multiple terms of confinement consecutively. We disagree. As the defendant essentially concedes, the statute's use of the singular is insignificant because, when construing statutes, "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular."[13] General Statutes § 1-1 (f). We presume, therefore, that the legislature intended that the rules applicable to multiple criminal sentences, namely, the common-law and statutory availability of both concurrent and consecutive sentencing, apply to commitments following insanity acquittals as well.

The defendant further contends, however, that the fundamental distinction between an incarceration pursuant to a criminal sentence and a commitment following an insanity acquittal "render[s] inapplicable the traditional sentencing policies of consecutive and concurrent sentencing" in the commitment context. Although we previously have acknowledged "a funda-

---

[13] Other jurisdictions, either by way of a statute analogous to General Statutes § 1-1 (f) or through common-law principles of statutory construction, have recognized that a statute's generic singular wording is without legal significance because it is presumed to include the plural as well. See, e.g., *State* v. *Brooks*, 187 Or. App. 388, 397, 67 P.3d 426 ("we note that [Or. Rev. Stat. § 174.127 (1)] states that, in construing Oregon statutes, 'the singular number may include the plural and the plural number, the singular' "), review denied, 335 Or. 578, 74 P.3d 112 (2003); *Wisconsin* v. *C.A.J.*, 148 Wis. 2d 137, 140, 434 N.W.2d 800 (App. 1988) ("[w]hen construing a statute with singular or plural nouns, [Wis. Stat. Ann. § 990.001 (West)], provides that '[t]he singular includes the plural, and the plural includes the singular' unless such a construction would contradict legislative intent"); see also *State* v. *Harris*, 39 Wash. App. 460, 463, 693 P.2d 750 (rejecting argument that statute's reference to "any offense" in singular was determinative, noting that Washington courts "have repeatedly construed the word 'any' to mean 'every' and 'all' "), review denied, 103 Wash. 2d 1030 (1985).

mental distinction between an incarceration pursuant to a criminal sentence and a commitment following an insanity acquittal"; *Copeland* v. *Warden*, 225 Conn. 46, 48–49, 621 A.2d 1311 (1993); this distinction does not require us to adopt the defendant's interpretation of § 53a-47 (b). Specifically, in *Copeland*, wherein this court concluded that a court may stay the execution of a criminal sentence until the completion of a psychiatric commitment; id., 50; we noted that, "[i]t is, in part, this distinction that compels us to treat this case as a 'stay' case rather than as a 'consecutive sentence' case." Id., 49. We follow the same logic in the present case, in accordance with this court's previous recognition that trial courts have the inherent common-law power to stay the execution of their own judgments and thereby order that confinements run consecutively, whether those confinements involve a criminal sentence or a psychiatric commitment.[14] See *Redway* v. *Walker*, 132 Conn. 300, 306, 43 A.2d 748 (1945) ("[i]n the absence of statute, the determination whether two sentences to the same penal institution shall run concurrently or consecutively is an incident to the judicial function of imposing sentences upon a convict and is a matter for the determination of the court"); cf. *Copeland* v. *Warden*, supra, 50 (trial court has inherent common-law power to stay execution of criminal sentence until expiration of psychiatric commitment); *State* v. *Williamson*, 206 Conn. 685, 701–702, 539 A.2d 561 (1988) (trial court retains inherent common-law authority to impose sentences consecutive to terms from other jurisdictions). Because courts have the inherent authority, wholly independent from statute, to impose confine-

---

[14] This power is not limited to criminal sentences, but stems from the judiciary's inherent authority to control its proceedings and the execution of its own judgments. See *Air Line Pilots Assn.* v. *Miller*, 523 U.S. 866, 879 n.6, 118 S. Ct. 1761, 140 L. Ed. 2d 1070 (1998) ("power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket" [internal quotation marks omitted]).

ment immediately or issue a stay, they have discretion to impose "concurrent" terms, or issue a stay or "consecutive" terms, as an incident to their judicial function. See *Copeland* v. *Warden*, supra, 48–54. Therefore, whether a court orders a term of imprisonment for a criminal sentence, an indeterminate sentence for civil contempt, or commitment to a mental health facility, it may delay or postpone execution of that term until the fulfillment of a specific condition precedent, such as the expiration of a former sentence, commitment or other confinement. See, e.g., id., 48–50 (staying criminal sentence until expiration of psychiatric commitment); *State* v. *Taylor*, 153 Conn. 72, 86, 214 A.2d 362 (1965) ("[t]he court and the jury have different areas of responsibility, and it is well within the province of the court, in fulfilling its judicial obligations, to accept a jury verdict in a criminal case before rendering judgment in the case of a codefendant who has elected trial to the court"), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); *Tatro* v. *Tatro*, 24 Conn. App. 180, 190 n.6, 587 A.2d 184 (1991) (granting plaintiff's motion for review of trial court's denial of her application for stay of civil contempt pending appeal, and ordering her release pending outcome of appeal).

Indeed, as previously stated, the defendant's argument, in effect, asks us to construe § 53a-47 (b) as having altered the common law, which we cannot do in the absence of a *clear* legislative mandate. See *Fennelly* v. *Norton*, supra, 294 Conn. 504–505 ("[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope" [internal quotation marks omitted]). Although the legislature may limit a court's ability to impose concurrent or consecutive terms, it is presumed not to overrule the judiciary's authority and discretion

in this regard unless such an intent is clearly expressed in the statute. See *Ullmann* v. *State*, 230 Conn. 698, 705, 647 A.2d 324 (1994) (contempt statute, General Statutes § 51-33, not intended to eliminate court's common-law remedies for contempt); *Copeland* v. *Warden*, supra, 225 Conn. 53 (sentencing statute, § 53a-37, inapplicable, but court had inherent power to stay criminal sentence until expiration of psychiatric commitment); *State* v. *Banks*, 59 Conn. App. 145, 149–50, 763 A.2d 1046 (2000) (§ 53a-37 inapplicable to criminal contempt, but court had inherent common-law power to impose concurrent or consecutive contempt terms). As previously discussed, § 53a-47 (b) does not manifest a clear intent to preclude courts from staying execution of one term of commitment until the expiration of another to create a total effective commitment that is consecutive in nature. Instead, the legislature intended to prohibit a person found not guilty by reason of mental disease or defect from being committed any longer than he could have been criminally sentenced for the underlying offense or offenses. Therefore, we conclude that, in the present case, in the absence of a limiting statute, the trial court had the inherent common-law power to impose on the defendant the consecutive commitment, by staying execution of one term until the expiration of another, for a total effective commitment of forty-five years.

The judgment is affirmed.

In this opinion the other justices concurred.